**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

UNITED STATES OF AMERICA,

     v.

STEPHEN MICHAEL KELLY, et al.,

CASE NO.: 2:18-cr-22

**O R D E R**

Defendants have been charged with: conspiracy, in violation of 18 U.S.C. § 371; destruction of property on a naval installation, in violation of 18 U.S.C. § 1363; depredation of government property, in violation of 18 U.S.C. § 1361; and trespass, in violation of 18 U.S.C. § 1382. Doc. 1. This case is set for jury selection and trial beginning on October 21, 2019. Doc. 509. In preparation for that trial, Defendants and the Government have filed a number of pretrial Motions, Notices, and supporting Memoranda. The Court addresses these matters in turn, and, for the reasons set forth below, the Court:

1. **SUSTAINS** the Government's Objection, doc. 613, to Defendants' Notices of Intent to Raise the Defense of Religious Freedom Restoration Act, docs. 532, 546, 560, 551, 570, 581, 592;

2. **DENIES** Defendants' Motions in Limine on the Application of the Religious Freedom Restoration Act to the Statutory Elements of the Charges, docs. 540, 541, 556, 566, 572, 588, 584;

3. **SUSTAINS** the Government's Objection, doc. 613, to Defendants' Notices of Intent to Raise First Amendment Defenses, docs. 536, 539, 555, 565, 568, 579, 587;

4. **GRANTS in part** the Government's Motion in Limine, doc. 530, concerning Defendants' justification or necessity defense and **SUSTAINS** the Government's Objection, doc. 613, to Defendants' Notices of Intent to Raise Defense of Necessity; docs. 542, 544, 557, 561, 573, 583, 589;

5. **DENIES in part** the Government's Motion in Limine, doc. 530, concerning the exclusion of evidence under Rule 401;

6.  **SUSTAINS** the Government's Objection to Defendants' Notices of Intent to Raise Defenses Under International Law and that Nuclear Weapons are Illegal Under U.S. Law as War Crimes and/or Genocide, docs. 543, 545, 558, 562, 571, 580, 590; 547, 548, 550, 559, 575, 582, 591; and

7.  **DENIES** Defendants' Motions to Take Judicial Notice of Certain Facts, docs. 534, 538, 554, 563, 569, 578, 586.

## DISCUSSION

I.   **Application of the Religious Freedom Restoration Act of 1993 at Trial**

Earlier in this case, Defendants filed motions to dismiss because, Defendants argued, the prosecution in this case violated Defendants' rights to religious exercise, as protected by the Religious Freedom Restoration Act of 1993 ("RFRA"). Docs. 87, 102, 118, 122, 141, 158, 171. The Court conducted an extensive, two-day evidentiary hearing on Defendants' motions to dismiss, during which each Defendant testified, Defendants called expert witnesses, the Government presented its own witnesses, and the parties were permitted to present argument in support of their positions. Following that hearing, the undersigned issued a Report, recommending that the Court deny Defendants' motions to dismiss. Doc. 411. Defendants filed objections to the Report and Recommendation, docs. 429, 432, 433, 437, 498, 499, 502, and the Court conducted an additional hearing on the matter. Doc. 480. After conducting a de novo review of the record, the Court overruled Defendants' objections and denied Defendants' motions to dismiss. Doc. 504. The Court concluded that, although Defendants established the prima facie elements of a RFRA defense, the Government "has satisfied its burden under RFRA of showing that it has a compelling interest in applying the laws at issue to Defendants for Defendants' actions at Kings Bay on April 4–5, 2018, and that applying the laws at issue to

Defendants for those actions is the least restrictive means of furthering its compelling interests." Id. at 18.[1]

Defendants have now filed several Notices and Motions in Limine concerning the applicability of RFRA at trial.[2]  In the RFRA Notices, Defendants state they intend to assert an affirmative defense under RFRA at trial.  In the RFRA Motions in Limine, Defendants argue that RFRA "must inform the Court's interpretation of certain statutory elements of the charges, as well as the Court's rulings on admissibility of evidence relevant to those elements."  E.g., Doc. 540 at 1.  The Government has filed Objections to the RFRA Notices and Responses in Opposition to the RFRA Motions in Limine.  Doc. 613.

### A.    Defendants' RFRA Notices

In the RFRA Notices, Defendants contend the Court must permit them to present a RFRA defense at trial, despite the denial of their motions to dismiss based on the same defense. Defendants rely on the statement in RFRA that a person "may assert [a violation of RFRA] as a claim or defense in a judicial proceeding . . . ."  42 U.S.C. § 2000bb-1(c).  Defendants argue the Court has already found that they have established the prima facie elements of a RFRA defense, and this finding supports allowing Defendants to present the RFRA defense at trial.  Defendants

---

[1]    For a more detailed background of these proceedings, see Documents 411 and 504.

[2]    The Defendants filed identical Notices regarding RFRA as an affirmative defense, docs. 532, 546, 551, 560, 570, 581, 592, and identical Motions in Limine regarding the application of RFRA to the statutory elements of the charges against them, docs. 540, 541, 556, 566, 572, 584, 588.  For ease of reference, in this Order, the Court will refer to the Defendants' Notices collectively as the "RFRA Notices" and their Motions as the "RFRA Motions in Limine."

In addition to the RFRA Notices and RFRA Motions in Limine, each Defendant filed identical "Memorandum[s] in Support of Intent to Raise Defenses."  Docs. 533, 537, 553, 564, 576, 585, 594. Defendants generally argue in these memoranda that prior cases involving similar facts (and, in some cases, involving some of the same Defendants) should be disregarded because, in Defendants' view, the words and actions of the current U.S. President "have made the use of nuclear weapons much more imminent," and because Defendants do not perceive the political process as a viable alternative to protests, like the one Defendants have allegedly committed here.  Id.

argue the ability to present a RFRA defense turns on whether "RFRA is an affirmative defense on the merits, to be decided by the jury (like the defenses of necessity or self-defense), or whether RFRA is the type of defense that can result in dismissal of an indictment regardless of the merits (like the defense of outrageous government conduct)." E.g., Doc. 532 at 3. Defendants point to decisions that characterize RFRA as an affirmative defense and contend that this designation means a RFRA defense must be presented to the jury. Defendants further contend that the elements of the Government's burden under RFRA—demonstrating a compelling interest in the law at issue and that the Government's actions are the least restrictive means of furthering that interest—require an individualized assessment of each Defendant's conduct and, therefore, the jury must to evaluate these issues in light of each Defendant's conduct on April 4–5, 2018. Id. at 6. Defendants point to civil cases in the Eleventh Circuit that have found that summary judgment was not appropriate on RFRA issues where genuine disputes of material facts existed, which, Defendants argue, shows that RFRA is a factual inquiry that must be decided by the jury.

In its Response, the Government argues the Court has already concluded that it has a compelling interest in the safety of individuals at Kings Bay Naval Submarine Base, the security of the assets housed there, and the smooth operation of the base, and that the application of the laws at issue in this case to Defendants is the least restrictive means of furthering the Government's compelling interests. Doc. 613 at 3–4 (citing Doc. 504, the Court's Order on Defendants' Motions to Dismiss). At base, the Government argues it has already met its burden as required under RFRA, and, therefore, Defendants are foreclosed from relitigating the issue before the jury at trial.

Although there is no Eleventh Circuit Court of Appeals authority directly on point, the Eighth Circuit Court of Appeals addressed this issue in United States v. Anderson, 854 F.3d 1033 (8th Cir. 2017). In Anderson, the defendant was charged with possession with intent to distribute heroin and conspiracy to distribute heroin. The defendant moved to dismiss the charges under RFRA, arguing that his distribution of heroin was an exercise of his sincerely held religious beliefs. Id. at 1034. The district court assumed the defendant's beliefs were sincerely held and substantially burdened for the purposes of the motion, but also held that the Government had demonstrated a compelling interest and least restrictive means. Based on these conclusions, the court prevented the defendant from presenting the RFRA defense at trial. Id. at 1035. The Eighth Circuit affirmed the district court's conclusions regarding the Government's compelling interest and least restrictive means and affirmed the decision to prohibit the defendant from presenting a RFRA defense a trial. The Eighth Circuit noted the compelling governmental interest and least restrictive means inquiries under RFRA are "questions of law," and once those issues were resolved by the district court, it was proper to prohibit the defendant from relitigating the issues before the jury. Id. at 1035–37. Similarly, the Eleventh Circuit has concluded that whether the RFRA applies is a "pure question of law" and that "determination of pure questions of law in criminal cases are not the province of the jury." United States v. Duncan, 356 F. App'x 250 (11th Cir. 2009) (affirming trial court's decision to not provide jury charge on RFRA);[3] see also United States v. Lepp, 446 F. App'x 44, 46 (9th Cir. 2011) (affirming denial of motion in limine seeking to present RFRA defense at trial where trial court

---

[3] In Duncan, the defendant did not move to dismiss the charges under RFRA but asked the court to issue an instruction to the jury on RFRA as a defense. The trial court rejected that request, ruling that the defendant had failed to present sufficient evidence to sustain the defense. Order, United States v. Duncan, No. 08-cr-20394 (S.D. Fla. July 29, 2008), ECF No. 46. Specifically, the court found that the defendant had not demonstrated a substantial burden, and the Government had satisfied the compelling interest and least restrictive means inquiries. Id. The Eleventh Circuit affirmed the trial court's rulings.

determined the Government had satisfied the compelling interest and least restrictive means inquiries).

Here, the Court has already fully considered Defendants' RFRA arguments in the course of ruling on Defendants' motions to dismiss. In its ruling, the Court determined that the Government has shown a compelling interest and that it is utilizing the least restrictive means. Doc. 504. Because this determination has been made as a matter of law, and Defendants may not present a RFRA defense to the jury at trial. For this reason alone, the Court would sustain the Government's objections to Defendants' RFRA Notices and prohibit Defendants from presenting a RFRA defense at trial.

Despite the authority cited above, Defendants argue that all aspects of the RFRA defense—including the Government's burden of demonstrating a compelling interest and least restrictive means inquiries—are factual issues that must be resolved by a jury. In support of this position, Defendants point to cases where courts determined that genuine issues of fact prevented the summary judgment in a civil RFRA suit. E.g., Doc. 532 at 7–8 (citing Davila v. Gladden, 777 F.3d 1198, 1205–07 (11th Cir. 2015), and Rich v. Sec'y, Fla. Dep't of Corr., 716 F.3d 525 (11th Cir. 2013)). These cases are distinguishable, and the Eleventh Circuit has confirmed that the applicability of RFRA in a criminal case is a pure question of law. But even if the compelling interest and least restrictive means inquiries were factual issues to ultimately be decided by the jury, the Court would still prohibit Defendants from presenting a RFRA defense at trial.

While it is correct that a criminal defendant has the right to have a jury resolve disputed factual issues, where the evidence, even if believed, does not establish all of the elements of a defense, the trial judge need not submit the defense to the jury. United States v. Foster, 153 F.

App'x 674, 676 (11th Cir. 2005) (holding that a defendant bears the initial burden to offer evidence of each of the elements of an affirmative defense and, if that burden of production is not met, defendant is not entitled to a charge on that affirmative defense or to present that defense to the jury); United States v. Fernandez, 837 F.2d 1031, 1035 (11th Cir. 1988) ("A defendant is entitled to have the court instruct the jury on his defense theory only if that theory has an evidentiary foundation and the requested instruction presents a cognizable legal defense."); United States v. Dorrell, 758 F.2d 427, 430 (9th Cir. 1985) (affirming trial judge's exclusion of necessity defense at trial where nuclear protestor charged with violating 18 U.S.C. §§ 1361 and 1382 attempted to introduce evidence of political and religious motivations, but failed to carry initial burden on essential elements of defense). Whether a defendant has presented sufficient evidence to support the elements of a defense is a question of law, to be decided by the court, not the jury. United States v. Calderon, 127 F.3d 1314, 1329 (11th Cir. 1997) ("The issue of whether the defense produced sufficient evidence to sustain a particular instruction such as a multiple conspiracy instruction, is generally a question of law subject to de novo review.").

Even if the compelling interest and least restrictive means inquiries were factual inquiries to be resolved by the jury—and they are not—the Court would still be tasked with determining if Defendants have produced sufficient evidence to submit the RFRA defense to the jury. In requesting to submit the RFRA defense to the jury now, Defendants rely on the same evidence presented during the evidentiary hearing held on Defendants' motions to dismiss under RFRA. The Court considered all of that evidence and determined the Government has shown a compelling interest and least restrictive means. Considering that evidence again, even in a light most favorable to the Defendants, results is the same conclusion: the Government has shown a

compelling interest and least restrictive means. Defendants, therefore, have not presented sufficient evidence to support the elements of a RFRA defense at trial.

Finally, in their RFRA Notices, Defendants rely on <u>United States v. Warren</u>, No. CR-18-00223-001, 2018 WL 4403753 (D. Ariz. 2018), for their contention that they must be allowed to present a RFRA defense at trial, but that case does not support their position. In <u>Warren</u>, the defendant was charged with unlawfully harboring illegal aliens in violation of 8 U.S.C. § 1324. The defendant moved to dismiss the charges under RFRA. 2018 WL 4403753, at *2. The court conducted an evidentiary hearing related to the motion and, ultimately, denied defendant's motion. <u>Id.</u> at *5. But unlike this case, the court in <u>Warren</u> denied the motion to dismiss because of unresolved questions of fact, and those facts went directly to the issue of the defendant's guilt on the underlying offense (e.g., whether certain evidence was attributable to defendant, whether the illegal aliens were in distress, etc.). <u>Id.</u>

In this case, the Court found that the Government demonstrated a compelling interest and that it was utilizing the least restrictive means, which has no bearing on Defendants' guilt or innocence on the underlying offenses. The last paragraph in <u>Warren</u> highlights another critical distinction. In <u>Warren</u>, the defendant had only moved for dismissal and had not, at the time of the order, sought to present RFRA as an affirmative defense at trial. <u>Id.</u> The court noted this and reiterated the threshold showing the defendant would need to make in order to present the defense at trial, explaining:

> [W]hether a criminal defendant has presented sufficient evidence to warrant a jury instruction on an affirmative defense *is* regarded as a predominantly a legal question. The Court can preclude an affirmative defense at trial if it also determines the defendant has failed to make a prima facie case showing he is eligible to it.

Id. (internal citations omitted). In making this observation, the court in <u>Warren</u> recognized that, even though questions of fact existed, the defendant would not necessarily be entitled to present a RFRA defense, unless it could establish sufficient evidence to support the defense. Thus, <u>Warren</u> supports the Court's analysis above, namely, that Defendants must satisfy a burden of production on each element of their RFRA defense, and if they are unable to meet that burden, they will not be permitted to present that defense at trial.

In sum, Defendants may not present a RFRA defense at trial. The Court has already determined—with the benefit of an extensive evidentiary hearing and multiple rounds of briefing—that the Government has a compelling interest in applying the laws at issue to Defendants for their actions on April 4–5, 2018, and that applying the laws at issue to Defendants for those actions is the least restrictive means of furthering its compelling interests. That determination is a pure question of law that has been resolved by the Court. Even if the Government's burden under RFRA was not to be decided as a pure question of law, Defendants have pointed to no new or different evidence in attempting re-urging their RFRA defense. Defendants' evidence, therefore, does not satisfy Defendants' burden of production on each element of the RFRA defense. Accordingly, the Court **SUSTAINS** the Government's Objections to Defendants' RFRA Notices.

### B. RFRA Motions in Limine

In the RFRA Motions in Limine, Defendants argue that some of the statutory elements of the offenses charged in the indictment "have effectively been amended" by RFRA, and, therefore, RFRA must inform the Court's "interpretation" of those elements as well as the

Court's decisions on the admissibility of evidence relevant to those elements.[4] E.g., Doc. 541 at 2. Specifically, Defendants contend the intent elements of the various offenses must be read in conjunction with RFRA such that the intent required for each offense must be modified to consider whether Defendants acted in accordance with a sincerely held religious belief.

For example, as to Count Two (destruction of property on naval installation, in violation of 18 U.S.C. § 1363), the Government must prove that Defendants acted "willfully and maliciously," but Defendants argue that element must be construed in light of RFRA, meaning that Defendants should be permitted to present evidence that they were acting in accordance with their sincerely held religious beliefs, which a jury could determine undermines the Government's showing that these Defendants acted "willfully and maliciously." Defendants make similar arguments regarding Count Three (depredation of government property, in violation of 18 U.S.C. § 1361) and Count Four (trespass, in violation of 18 U.S.C. 1382) and extend this argument to Count One (conspiracy, in violation of 18 U.S.C. § 371) by pointing back to the intent aspects of Counts Two, Three, and Four which serve as the basis for the conspiracy charge.

Defendants' argument that the statutory elements being "effectively amended" by RFRA is without merit. Defendants cite no authority for this proposition, nor does any exist. RFRA exists as an affirmative defense to criminal prosecution, but it does not modify the essential statutory elements of every underlying offense.

---

[4] Defendants emphasize that RFRA Motions in Limine and the RFRA Notices present different issues. In the RFRA Motions in Limine, Defendants argue the essential elements of the offenses are impacted by RFRA, but in the RFRA Notices, Defendants argue they are entitled to raise a RFRA defense at trial, regardless of the essential elements of the offenses. In other words, the RFRA Motions in Limine concern what elements the Government must prove and what evidence is relevant to those elements, while the RFRA Notices concern what Defendants may assert as an affirmative defense in response to the Government's case.

While Defendants' Motions in Limine are not the model of clarity, it appears that Defendants argue, alternatively, that even if RFRA does not modify the essential statutory elements of the charged offenses, Defendants should still be permitted to present evidence about their religious beliefs and the religious nature of their conduct to challenge the Government's showing on intent. However, applying that reasoning each substantive count demonstrates that Defendants' religious beliefs have no bearing on the intent element of any of the charged offenses, and, therefore, evidence of Defendants' religious beliefs would be irrelevant to proving or negating their intent.

In Count Three, Defendants are charged with depredation of government property in violation of 18 U.S.C. § 1361. Doc. 1 at 6. Relevant to Defendants, § 1361 makes it a crime for one to "willfully" injure or commit any depredation against the property of the United States, its departments, or agencies. In United States v. Urfer, 287 F.3d 663, 666 (7th Cir. 2002), the Seventh Circuit Court of Appeals considered this provision in a case against a nuclear protesters who vandalized U.S. Navy property used in the operation of nuclear submarines. Defendants in that case argued that their attorney advised them that their conduct was permissible under international law and argued that advice of counsel was relevant to whether the defendants acted with the requisite intent. In considering the issue of intent, the court explained that "willfully" in § 1361 means, simply, that the "defendant knows that he's destroying another person's property without the person's authorization." Id. The court explained that the meaning of "willful" varies with context, but when the term is used in a *mala in se* statue, like § 1361 (criminalizing destruction of property), the term "willful" means only that the defendant acted deliberately, and does not require that he knew his act was illegal. Ultimately, the Urfer court held that the trial court should not have provided an advice of counsel jury charge, because the defendants'

reliance on advice of counsel was irrelevant to the intent element, given that all the Government was required to prove was that the defendants acted deliberately and without authorization.[5] Similarly, in this case, Defendants' religious beliefs are not relevant to § 1361's intent element. The relevant inquiry is whether Defendants knew they were destroying another's property without authorization. The existence or nonexistence of Defendants' religious beliefs, and whether such beliefs motivated Defendants' conduct, has no bearing on the intent element of § 1361.

In Count Two, Defendants are charged with destruction of property on naval installation, in violation of 18 U.S.C. § 1363. Doc. 1 at 5. Section 1363 makes it a crime for one to "willfully and maliciously" destroy or damage certain buildings or property within special maritime and territorial jurisdiction of the United States. In construing the meaning of "willfully and maliciously" in § 1363, the Ninth Circuit Court of Appeals explained "a defendant violates that section when he willfully acts, intending to destroy or injure any such property, and has no legal justification or excuse for his action." United States v. Kelly, 676 F.3d 912, 919 (9th Cir. 2012). In Kelly, the Ninth Circuit rejected the notion that the term "maliciously" required ill will or evil motive on the part of the defendant. Id. Additionally, the Eleventh Circuit pattern jury instructions define "maliciously" (as that term is used in 18 U.S.C. § 844(i)) as meaning that the defendant acted "intentionally or with willful disregard of the likelihood that damage or injury would result from his or her acts." Pattern Crim. Jury Instr. 11th Cir., Offense Instruction O28 (2019). Under either formulation of "maliciously," there is no need to prove that a defendant

---

[5]     Notably, in Urfer, the court affirmed the trial court's limitations on defendants' efforts "to turn the trial into a referendum on U.S. defense strategy, international law, and civil disobedience . . . ." 287 F.3d at 665. The court explained the defendants' "disagreement with U.S. defense policy and moral disapproval of a law" were not defenses to violating the law, and the trial court was well within its discretion to limit evidence related to untenable defenses. Id.

acted with ill will or evil motive, and a defendant's benevolent or even religious motivations, even if proven, will not excuse the conduct or negate the defendant's intent. Rather, the inquiry is focused on whether the defendant intended to destroy or injure property, or willfully disregarded the likelihood of damage, without *legal* excuse or justification. Therefore, Defendants' religious beliefs and motivations are not relevant to the intent element of § 1363.

In Count Four, Defendants are charged with trespass, in violation of 18 U.S.C. § 1382. Doc. 1 at 7. Section 1382 makes it a crime to enter on certain military property "for any purpose prohibited by law or lawful regulation." The requisite prohibited "purpose" can be the unauthorized entry itself, and there is no specific intent required to violate the statute. United States v. Parrilla Bonilla, 648 F.2d 1373, 1377 (1st Cir. 1981) ("We conclude, in essential agreement with virtually every other court that has considered the issue, that the requisite prohibited 'purpose' under section 1382 can consist of unauthorized entry itself, and that no 'specific intent,' in the strict sense, to violate the law or regulation prohibiting such entry need be shown."); see also United States v. McGrath-Andino, 143 F. Supp. 2d 184, 185 (D.P.R. 2001) (rejecting defendants' request to present evidence at trial regarding religious motivation for entering military installation without permission because defendant admitted to unauthorized entry, and unauthorized entry is all that is required to demonstrate an prohibited purpose under the statute). In this case, Defendants have never deviated—whether during the evidentiary hearing on their motions to dismiss or in the current motions in limine—from the position that they knew their entry to Naval Submarine Base Kings Bay was unauthorized. Therefore, there is no dispute about whether Defendants entered for a prohibited purpose. Moreover, Defendants' religious beliefs, even if they provide additional "purposes" for entry into Kings Bay, are not

relevant to whether Defendants entered for a prohibited purpose. Therefore, Defendants' religious beliefs and motivations are not relevant to the prohibited "purpose" element of § 1382.

Finally, in Count One, Defendants are charged with conspiracy, in violation of 18 U.S.C. 371. Doc. 1 at 1–2. As to this charge, Defendants merely rely on the arguments related to the intent elements of Counts Two, Three, and Four, in that they are charged with conspiring to commit the violations charged in those counts. E.g., Doc. 541 at 7–8. Defendants do not raise an independent argument for the introduction of their religious motivations as they pertain to the conspiracy charge in Count One. Therefore, Defendants have not pointed to any essential element of Count One to which Defendants' religious beliefs and motivations would be relevant.

In sum, RFRA has not "effectively amended" the statutory elements, as Defendants argue and Defendants' religious beliefs and the religious nature of their conduct are not relevant to any of the statutory elements of the charged offenses. Accordingly, the Court **DENIES** Defendants' RFRA Motions in Limine.

## II. Defendants' Notices of Intent to Raise First Amendment Defenses

Each Defendant filed an identical notice stating he or she will request a jury instruction "that the First Amendment protects the rights of defendants to practice their religion, to hold signs, and to act in ways that highlight their sincerely held beliefs that nuclear weapons are illegal and immoral." E.g., Doc. 536 at 2.

In Response, the Government contends Defendants' desire to raise the First Amendment as a defense to their actions is essentially akin to the issues raised in its Motion in Limine (discussed below) regarding Defendants' necessity or justification defense. Doc. 613 at 1. As such, the Government asserts Defendants should not be permitted to present their desired First Amendment defenses to the jury. Id.

To the extent Defendants seek to present a First Amendment defense based on a free exercise theory, Defendants are prohibited from doing so for all of the reasons set forth above related to a RFRA defense. The only difference between a First Amendment free-exercise defense and a RFRA defense is that the standard under RFRA is more favorable to Defendants. Indeed, the only reason RFRA was enacted was to restore and strengthen the test by which to test governmental burdens on sincerely held religious beliefs (i.e., the compelling interest test), and to ensure religious liberty received even stronger protections than what was constitutionally required. See Holt v. Hobbs, 135 S. Ct. 853, 859 (2015); Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 694 (2014). Therefore, a First Amendment free exercise defense cannot prevail where a RFRA defense fails, as it does in this case.

To the extent Defendants seek to present a First Amendment defense based on freedom of speech, Defendants are prohibited from doing so, but for different reasons. The "government's power to restrict political demonstrations or other First Amendment activity on government property depends upon the type of forum involved." United States v. Corrigan, 144 F.3d 763, 767 (11th Cir. 1998) (citing Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 799–800 (1985); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44–46 (1983))). There are "three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." Id. (citing Perry, 460 U.S. at 44–46). "In traditional public fora, such as public streets or parks, the government may impose content-based regulations only if the regulations are 'necessary to serve a compelling state interest and [are] narrowly drawn to achieve that end,' and may impose content-neutral time, place, and manner restrictions only if they 'are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" Id. (quoting Perry, 460 U.S. at 45)

(alteration in original). Military bases, however, are typically not public fora and cannot be "regarded or designated as a place open to public speech activities." Id. (quoting cases). Thus, military officials "may impose regulations on speech as long as the regulations are reasonable and content-neutral." Id. at 768.

The defendants in Corrigan were charged with and convicted of trespass onto a military installation, in violation of § 1382. The defendants appealed their convictions by asserting the regulation imposed on Fort Benning, Georgia, prohibiting political demonstrations on the base "was not applied in a content-neutral fashion[]" and should have been reversed on First Amendment grounds. Id. at 765, 766. In affirming the defendants' convictions, the Eleventh Circuit noted the Supreme Court already determined § 1382 is content-neutral, id. at 768 (citing United States v. Albertini, 472 U.S. 675, 687 (1985)), and also noted the same is true of the imposed regulation. Id. The Eleventh Circuit stated that "both the statute and the base regulation" were "facially reasonable in light of the traditional need of the military to retain control over the scope and extent of public activity and speech permitted on . . . military base[s], the interest of the government in keeping official military activities . . . free of entanglement with partisan political campaigns, and the military commanding officer's practically exclusive power to admit private persons to, or exclude them from, the area of his command in the interest of good order and military discipline." Id. (alterations in original) (citations omitted).

Like the defendants in Corrigan, Defendants in this case have been charged with violation of § 1382 after they breached fences and other security measures around Kings Bay. Doc. 1 at 7; Doc. 411 at 1; Doc. 504. As controlling precedent dictates that § 1382 is content-neutral, and Defendants have presented no evidence suggesting that § 1362 has been applied in a content-based manner, the Court need not discuss this provision any further. Like the regulation at issue

in <u>Corrigan</u>, any regulation the base commander imposed at Kings Bay, designed to prevent entrance to unauthorized persons, is reasonable, as "nothing can be allowed to interfere with strict security measures[]" at the base, which could lead to the endangering of safety of personnel and unauthorized persons, security on the base, and have an impact on the base's operation. Doc. 227-1 at 5, 6; Doc. 316 at 227–28. Accordingly, Defendants should not be permitted to present the First Amendment as a defense against the charges of trespass under § 1382.[6] The Court **SUSTAINS** the Government's Objection as to this portion of Defendants' Notices.

The Court also **SUSTAINS** the Government's remaining Objections to Defendants' Notices relating to the First Amendment and Defendants' alleged violations of §§ 371, 1361, and 1363. Defendants' actions are alleged to have occurred on a naval base, which is a non-public forum. There is nothing before the Court indicating these statutes are not content neutral or that the statutes were applied to Defendants based on the content of their speech. Additionally, and as noted above, each of these statutes has an intent element. Assuming the Government can prove each Defendant's intent under these any or all of three statutes, Defendants' "reason for the intent is irrelevant," and their religious and political motivations would be irrelevant. <u>United States v. Walli</u>, Crim. No. 12-107, 2013 WL 1838159, at *11 (E.D. Tenn. Apr. 30, 2013).[7] However, nothing in this Order serves to bar Defendants from arguing the Government "has not met its burden on the intent element or from presenting their own evidence on the intent element[]" of each of these three statutes. <u>Id.</u>

---

[6]     Defendants are entitled to defend themselves against the charges levied against them. However, by filing their Notices relating to a First Amendment defense, it is incumbent on this Court to streamline the matters the jury should be presented with before the trial of this case begins, particularly where Defendants do not meet the burden necessary by way of proffer to allow such matters to be presented to a jury.

[7]     The defendants in <u>Walli</u> were charged with violations of §§ 1361 and 1363, among other things. 2013 WL 1838159, at *1.

**III.    Government's Motion in Limine, Doc. 530**

In its Motion in Limine, the Government seeks to exclude Defendants' justification or necessity defense unless each Defendant first makes a proffer, outside of the jury's presence, of evidence sufficient to establish all four prongs of this defense.  Doc. 530.  In addition, the Government asks the Court to prohibit Defendants from presenting evidence or argument relating to the "lethality of nuclear weapons and whether such weapons are . . . located on Naval Submarine Base Kings Bay."  Id. at 4.  The Government asserts that this evidence is relevant only to a justification or necessity defense and, if Defendants are allowed to present any such evidence, there is a high likelihood of confusing the jury.  In addition, the Government alleges evidence relating to the monitoring of alarm systems, the size and location of security teams, and policy and procedures governing use of force on the base are also irrelevant and subject to exclusion.

Each Defendant filed a Notice of Intent to Raise Defense of Necessity and supporting Memoranda, which are identical in every material way.  Docs. 533, 537, 542, 544, 553, 557, 561, 564, 573, 576, 583, 585, 589, 594.  Each Defendant contends he or she sincerely believed they were faced with choosing between two evils, and that each one believed they had no other legal alternative to violating the law due to the imminent harm the presence of nuclear weapons poses. Id.  The Government filed a Response in opposition to Defendants' Notices of Intent to Raise Defense of Necessity.  Doc. 613.  In addition, Defendants have filed Responses to the Government's Motion in Limine, which are also identical in every material respect.  Docs. 598, 602, 606, 610, 615, 624, 625.

## A.        Justification or Necessity Defense[8]

The defense of justification or necessity "is an affirmative defense which essentially excuses otherwise criminal conduct which is committed for the purpose of preventing an imminent greater harm." United States v. Hill, 893 F. Supp. 1044, 1045 (N.D. Fla. 1994) (citing United States v. Bailey, 444 U.S. 394, 409–10 (1979)).  Before this affirmative defense can be presented to a jury, a "defendant must first produce or proffer evidence sufficient to prove the essential elements of the defense." Id.  A defendant must show the essential elements of a justification or necessity defense, which are: "(1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were no other legal alternatives to violating the law." Id. at 1045–46.  This defense is difficult to establish, as a defendant "must, among other things, show that there was 'no reasonable alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm.'" United States v. Greenpeace, Inc., 314 F. Supp. 2d 1252, 1265 (S.D. Fla. 2004) (quoting United States v. Montgomery, 772 F.2d 733, 736 (11th Cir. 1985)).  In fact, "federal courts have uniformly rejected justification [defenses] in civil disobedience cases where the defendants contend that their illegal activity is justified because the normal political processes are ineffective." Id. (first citing United States v. Ayala, 289 F.3d 16, 26 (1st Cir. 2002) (protesters of bombing exercises on Vieques who illegally entered naval installation); then citing Montgomery, 772 F.2d at 736 (anti-nuclear protesters who entered government defense plant, hammered and poured blood on conventional and nuclear missile launchers, hung banners, and

---

[8]        Defendants cite to the Model Penal Code's definition for justification and note the Government "prefers" the Eleventh Circuit's "four-part formulation" for this defense. E.g., Doc. 625 at 4–5.  The Court will use the Eleventh Circuit's formulation, as it must.

distributed pictures); and then citing <u>United States v. Quilty</u>, 741 F.2d 1031, 1033–34 (7th Cir. 1984) (anti-nuclear demonstrators who entered military property without permission after issuance of bar order))).

In choosing to gain entry onto Naval Submarine Base Kings Bay, Defendants maintain they "chose the lesser of two evils." <u>E.g.</u>, Doc. 542 at 1. Defendants state the use of nuclear weapons "cannot discriminate between civilian and military targets[, and e]ach of the . . . nuclear missiles kept at Kings Bay contain many multiples of the" power the United States used at the end of World War II. <u>Id.</u> While Defendants may believe the only "two evils" they faced were to sit silently or passively to allow nuclear proliferation to continue or to break existing laws, this is not so. Defendants could have protested the presence of nuclear weapons without illegally entering Kings Bay and Defendants could have pursued the political process for seeking a change in U.S. nuclear weapons policy.

As to the second prong, Defendants assert they "sincerely believed and acted reasonably to prevent imminent harm [because] the harm of nuclear weapons is . . . more imminent at the current moment that at any time recently." Doc. 544 at 1. Defendants also contend, on the third prong, they "reasonably believed" their actions "could have an impact on the harm [they] wished to avoid." Doc. 561 at 1–2. Defendants aver the only hope for "real disarmament[]" is the symbolic disarming of these nuclear weapons. <u>Id.</u> at 2.

As a court in this Circuit observed, "Many courts have considered these elements in the context of . . . anti-nuclear protestors seeking to use the necessity defense." <u>Hill</u>, 893 F. Supp. at 1046. In fact, the <u>Hill</u> court, quoting <u>Montgomery</u>, noted the Eleventh Circuit determined the defendants in <u>Montgomery</u> "'could not hold a reasonable belief that a direct consequence of their

actions would be nuclear disarmament.'" Id. (quoting Montgomery, 772 F.3d at 736).[9]  The Hill

court further noted other Circuits are in accord with the Eleventh Circuit's determination.  Id.

(citing cases from the Eighth, Ninth, Seventh, Fourth, and Tenth Circuits).  Protestors such as

Defendants in this case "are not entitled to present a necessity defense because of the lack of a

causal connection between their illegal methods of protest and the results they seek.  Also, the

harm they seek to prevent, while possible, is not 'imminent.'  That is, nuclear warfare is possible

because nuclear weapons exist, but protestors could not prove that nuclear weapons would be

used in the immediate future, or that they would ever be used."  Id.  Defendants have not

presented evidence that unlawfully entering Kings Bay would result in nuclear disarmament or

that this country will use nuclear weapons at any imminent time.

Finally, Defendants contend they "reasonably believed" there to be "no other legal

alternatives to violating the law[,]" as they have "spoken, written, prayed, petitioned, and lobbied

for nuclear disarmament and peace for decades[]" to no avail.  E.g., Doc. 573 at 2.  "People are

not legally justified in committing crimes simply because their message goes unheeded."

Montgomery, 772 F.2d at 736.  Thus, Defendants do not meet the fourth and final element of the

proffer requirements.

---

[9]     The Court notes Defendants' assertion that the "lack of an 'imminent' threat raised in
Montgomery[] is outdated and no longer applicable."  Doc. 561 at 4.  Even if the imminent threat present
in Montgomery were outdated, Montgomery has not been overruled and is still controlling precedent.
Additionally, Defendants' citation to a recent State of Washington case as support for their necessity
defense is unavailing.  E.g., Doc. 557 at 4–5.  In State v. Ward, the defendant was prosecuted under
Washington state law and wished to present a necessity defense.  438 P.3d 588 (Wash. Ct. App. 2019).
The Washington appeals court stated that, although a defendant has a right to establish a defense under
the due process clause, such a right "is not absolute[]" and is "subject to established rules of procedure
and evidence."  Id. at 593.  Although a defendant cannot present irrelevant evidence, a defendant cannot
be prohibited from "presenting evidence or witnesses on the necessity defense[]" to show that he "would
likely be able to meet each element of the necessity defense . . ."  Id.  Here, Defendants have had the
opportunity to present evidence in support of their justification or necessity defense to the Court and have
not met their burden.

Because Defendants have not shown the existence of any of the four elements of a justification or necessity defense, the Court **GRANTS in part** the Government's Motion in Limine. Defendants shall not be entitled to present to the jury evidence relating to the affirmative defense of justification or necessity during the course of this trial. By necessary extension, the Court **SUSTAINS** the Government's Objection, doc. 613, to Defendants' Notices of Intent to Raise Defense of Necessity; docs. 542, 544, 557, 561, 573, 583, 589.

**B.      Exclusion of Evidence Under Rule 401**

The Government seeks exclusion of evidence relating to the lethality of nuclear weapons, their presence on Kings Bay, monitoring of alarm systems, the size and location of security teams, and policies and procedures governing the use of force on Kings Bay. Doc. 530.

Under Rule of Evidence 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible. Fed. R. Evid. 202. However, relevant evidence can still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court **DENIES** this portion of the Government's Motion in Limine. Evidence relating to the lethality of nuclear weapons, their presence on Kings Bay, monitoring of alarm systems, the size and location of security teams, and policies and procedures governing the use of force on Kings Bay is not foreclosed entirely at this stage. Defendants are only foreclosed from offering such evidence if it is offered solely in support of a necessity or justification defense. If Defendants are able to demonstrate some permissible purpose under the Federal

Rules of Evidence, and such evidence is admissible under the Rules, then Defendants may be permitted to offer the evidence at trial.

## IV. Notices of Intent to Raise Defenses that Nuclear Weapons are Illegal Under Domestic and International Law

Defendants filed Notices stating that they intend to present defenses that they were legally authorized to engage the alleged conduct under international law, because nuclear weapons are—in Defendants' view—illegal under international law. E.g., Doc. 543. Similarly, Defendants filed Notices stating that they intend to present defenses that they were legally authorized to engage the alleged conduct under domestic law, because nuclear weapons are— again, in Defendants' view—illegal under domestic law. Doc. 547. At base, Defendants argue that any threat or use of nuclear weapons is a war crime under domestic and international law, and, therefore, Defendants were authorized by law to engage in the conduct giving rise to the charges in this case. Defendants' arguments are simply a variation of their justification defense. The Government objects to Defendants' Notices. Doc. 613 at 7–9.

Other courts have considered the availability of an international law justification or necessity defense in cases like this one and have uniformly rejected it. See United States v. Kelly, 676 F.3d 912, 915 (6th Cir. 2012); Montgomery, 772 F.2d at 737; United States v. Lowe, 654 F.2d 562, 566–67 (9th Cir. 1981); United States v. May, 622 F.2d 1000, 1009 (9th Cir. 1980); United States v. Shiel, 611 F.2d 526, 528 (4th Cir. 1979). Even setting aside the primary problem with Defendants' argument—the assumption that mere possession of nuclear weapons is illegal under international law—Defendants' argument fails because there is legal support for the theory that the Government's violations of international will justify an individual citizen's violations of domestic law. As the Eleventh Circuit explained in Montgomery, 772 F.2d at 737, Defendants cannot justify their violations of domestic law by pointing to the Government's

purported obligations under (or violations of) international law.  Defendants were under no legal

duty to engage in any action related nuclear weapons, and, therefore, cannot point to the

Government's international law obligations as a justification for their conduct.  Defendants'

purported defense based on the notion that possession of nuclear weapons is a war crime under

domestic law fails for the same reasons.  Defendants cannot point to the Government's purported

legal violations as a justification for their own criminal conduct.  Moreover, Defendants' theory

of defense relies on the notion that international and domestic prohibitions on certain war crimes

conflict with the domestic criminal statutes under which they have been charged, but that theory

has been soundly rejected.  Kelly, 676 F.3d at 916 ("Congress has decided to protect the property

of the United States.  The Hague Convention neither conflicts with nor supersedes those

statutes.").  Defendants' desire to present defenses based on the illegality of nuclear weapons

under international law and domestic law is without merit, and the Court **SUSTAINS** the

Government's Objection.

V.      **Defendants' Motions to Take Judicial Notice of Certain Facts**

Defendants have also filed identical Motions to Take Judicial Notice of Certain Facts.

Docs. 563, 534, 569, 554, 538, 578, 586.  In their Motions, Defendants ask the Court to take

judicial notice of 15 enumerated items.  Id.  The Government filed a Response.  Doc. 613.  For

the reasons set forth herein, the Court **DENIES** Defendants' Motions and declines to take

judicial notice of all enumerated items.

Federal Rule of Evidence 201(b) authorizes courts to take judicial notice of certain

adjudicative facts that are not subject to reasonable dispute because the facts are: (1) generally

known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

determined from sources whose accuracy cannot be reasonably questioned.  Courts should

exercise due caution in taking judicial notice, because it bypasses the traditional safeguards that exist when proving facts through the presentation of competent evidence. Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997). The Court need not take judicial notice of a fact that is irrelevant to the case or is a non-adjudicative fact. See United States v. Emmons, 524 F. App'x 995, 997 (6th Cir. 2013) (declining to notice irrelevant proceedings); United States v. Lumiguid, 499 F. App'x 689, 691 (9th Cir. 2012) (state statutes on licensing of nurses irrelevant to scam for using unlicensed nurses and charging Medicare for licensed registered nurses); Banks v. Clark County, 461 F. App'x 585, 587 (9th Cir. 2011) (proper to deny judicial notice of irrelevant matter); Whiting v. AARP, 637 F.3d 355, 364 (D.C. Cir. 2011) (material generated by Senate Finance Committee in investigating AARP not relevant and not noticeable on motion to dismiss for failure to state a claim); United States v. Burlington Northern & Santa Fe Ry. Co., 520 F.3d 918, 930 n.2 (9th Cir. 2008) (declining to notice EPA proceedings that "do not have a direct relation to the matters at issue"); Hadley v. Blakey, 160 F. App'x 612, 614 n.1 (9th Cir. 2005) (FAA documents not relevant to any valid claim for relief).

Defendants' proffered facts identified as items 1–7 in their Motions concern facilities, equipment, and the capabilities of the assets at Naval Submarine Base Kings Bay. Defendants provide no explanation for the relevance of these facts concerning the issues to be presented at trial and the Court is unaware of a relevance of these facts, particularly in light of the rulings made in this Order concerning the availability of certain defenses. The Court, therefore, declines to take judicial notice of Defendants' items 1–7.

Defendants' proffered fact identified as item 8 in their Motions concerns a letter that certain officials sent to Congress objecting to certain nuclear weapons funding requests. Defendants provide no explanation for the relevance of this letter concerning the issues to be

presented at trial and the Court is unaware of a relevance of this letter, particularly in light of the rulings made in this Order concerning the availability of certain defenses.  The Court, therefore, declines to take judicial notice of Defendants' item 8.

Defendants' proffered facts identified as items 9–13 in their Motions concern the United States' treaty obligations, the contents of the underlying treaties, and multiple domestic criminal statutes.  E.g., Doc. 554 at 3–6.  Here, there is no need for the Court to take judicial notice of federal law because federal law is a legislative, not an adjudicative, fact.  Similarly, there is no need for the Court to take judicial notice of international law or treaty obligations.  See United States v. Thetford, No. 3:11-CR-30159, 2014 WL 7409515, at *16 (D.S.D. Dec. 31, 2014), aff'd, 806 F.3d 442 (8th Cir. 2015) (declining to take judicial notice of treaties and international law).  Thus, it is not an appropriate subject for judicial notice.  As discussed, Rule 201 allows courts to take judicial notice of "adjudicative fact[s]."  Fed. R. Evid. 201(b).  Judicial notice, with limited exception, is reserved for facts, and facts alone.  United States v. Dedman, 527 F.3d 577, 586–87 (6th Cir. 2008); see also Toth v. Grand Trunk R.R., 306 F.3d 335, 349 (6th Cir. 2002) ("[J]udicial notice is generally not the appropriate means to establish the legal principles governing the case.").  Furthermore, Defendants provide no explanation for the relevance of these laws and treaties concerning the issues to be presented at trial, and the Court is unaware of any relevance, particularly in light of the rulings made in this Order concerning the availability of certain defenses.  The Court, therefore, declines to take judicial notice of Defendants' items 14 and 15.

Defendants' proffered facts identified as items 14 and 15 in their Motions concern statements made by the President of the United States related to nuclear weapons.  Defendants provide no explanation for the relevance of these facts concerning the issues to be presented at

trial and the Court is unaware of a relevance of these facts, particularly in light of the rulings made in this Order concerning the availability of certain defenses. The Court, therefore, declines to take judicial notice of Defendants' items 14 and 15.

## CONCLUSION

Based on the foregoing, the Court:

1. **SUSTAINS** the Government's Objection, doc. 613, to Defendants' Notices of Intent to Raise the Defense of Religious Freedom Restoration Act, docs. 532, 546, 560, 551, 570, 581, 592;

2. **DENIES** Defendants' Motions in Limine on the Application of the Religious Freedom Restoration Act to the Statutory Elements of the Charges, docs. 540, 541, 556, 566, 572, 588, 584;

3. **SUSTAINS** the Government's Objection, doc. 613, to Defendants' Notices of Intent to Raise First Amendment Defenses, docs. 536, 539, 555, 565, 568, 579, 587;

4. **GRANTS in part** the Government's Motion in Limine, doc. 530, concerning Defendants' justification or necessity defense and **SUSTAINS** the Government's Objection, doc. 613, to Defendants' Notices of Intent to Raise Defense of Necessity; docs. 542, 544, 557, 561, 573, 583, 589;

5. **DENIES in part** the Government's Motion in Limine, doc. 530, concerning the exclusion of evidence under Rule 401;

6. **SUSTAINS** the Government's Objection to Defendants' Notices of Intent to Raise Defenses Under International Law and that Nuclear Weapons are Illegal Under U.S. Law as War Crimes and/or Genocide, docs. 543, 545, 558, 562, 571, 580, 590; 547, 548, 550, 559, 575, 582, 591; and

7. **DENIES** Defendants' Motions to Take Judicial Notice of Certain Facts, docs. 534, 538, 554, 563, 569, 578, 586.

**SO ORDERED**, this 11th day of October, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA